IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


BARDEN MISSISSIPPI GAMING, LLC
d/b/a FITZGERALD'S CASINO                                          PLAINTIFF


V.                                                    CIVIL ACTION NO. 3:07CV21-SAA


GREAT NORTHERN INSURANCE COMPANY
AND TOP LINE SEATING, INC.                                        DEFENDANTS


MEMORANDUM OPINION

This case is before the court on cross motions for summary judgment, including

plaintiff's motions against defendants Top Line Seating, Inc. ("Top Line") and Great Northern

Insurance Company ("Great Northern") and motions by each defendant against plaintiff. All

four motions are now fully briefed and ready for review.

The district court's jurisdiction over this dispute between diverse parties rests upon 28

U.S.C. § 1332. In accordance with the provisions of 28 U.S.C. § 636(c), all parties consented to

have a United States Magistrate Judge conduct the proceedings in this case, including an order

for entry of a final judgment. Therefore, the undersigned has authority to decide these motions.

FACTUAL SUMMARY

This case arises out of the sale of eight hundred slot machine stools by Top Line to

Barden in May 2002. As the result of problems with the stools, Barden filed a state court action

against Top Line in February 2003.[1] The case was removed to this court and ultimately settled

---

[1] The 2003 suit between plaintiff and Top Line was for breach of contract and breach of
warranty claims. This case was settled. In the instant case, plaintiff has raised the issue of

by agreement of the parties on October 29, 2003.

      The settlement agreement between Barden and Top Line states in part:

> [Top Line] agrees as to the said 700 stools to name [Barden] as an additional insured in [Top Line's] liability and any excess (umbrella) liability insurance policy(ies), with the same or similar coverage as per the attached Certificate except for excess liability coverage which will be a minimum of $500,000.00 through October 15, 2012.  Such will insure [Barden], on an occurrence basis, for third party claims for personal injury, death or property damage arising from the sole negligence of [Top Line] regarding the 700 stools. [Barden] approves the additional insured language contained in the attached Certificate of Liability Insurance that will be effective for occurrences taking place on or after the date of this Agreement, per the terms of the attached Certificate.

[Docket No. 53-2, p. 4].  The "Certificate of Liability Insurance" referenced in the settlement

agreement and memorialized in an endorsement to the insurance policy issued by Great Northern

provides:

> Barden Mississippi Gaming, LLC d/b/a Fitzgeralds Tunica Casino/Hotel is named as an additional insured but only with respect to their liability for:
>> * bodily injury or property damage caused by the sole negligence of Top Line Seating, Inc.; and
>> * occurrences taking place on or after the effective date of the settlement agreement dated October 29, 2003, between Barden Mississippi Gaming, LLC d/b/a Fitzgeralds Tunica Casino/Hotel and Top Line Seating, in connection with the goods or products described in the schedule below:
>
> Schedule
> Person or organization: Barden Mississippi Gaming, LLC d/b/a Fitzgeralds Tunica Casino/Hotel
>
> Goods or products: 800 slot stools shipped by Top Line Seating, Inc. to Barden Mississippi Gaming, LLC d/b/a Fitzgeralds Tunica Casino/Hotel, such stools being the same as those which are the subject of a lawsuit entitled Barden Mississippi Gaming,

---

warranty, however there is no claim for breach of warranty in the complaint and the warranty from Top Line to plaintiff is not currently in issue.  Accordingly, the court will not review this late urged and unplead claim.  Such a claim was previously made and settled between the parties. *See Barden Mississippi Gaming, LLC, d/b/a Fitzgeralds Tunica Casino/Hotel v. Top Line Seating, Inc.*, Civil Action No. 2:03cv146-MPM.

LLC d/b/a Fitzgeralds [sic] Tunica Casino/Hotel v. Top Line Seating, Inc. filed in Tunica County, Mississippi, Docket No. 2003-0249.

[Docket No. 55-3, p. 37].

After execution of the settlement agreement, Top Line performed certain modifications on the stools, some at Top Line's facility in New Jersey and others at Barden's facility in Tunica, Mississippi. Both plaintiff's employees and employees of Top Line removed the stools from the gaming floor for the modifications to be performed at Barden's facility. Further, plaintiff's employees testified that they perform daily inspections of all stools in the slot area for safety.

Mary Geraldine "Jerry" Baier sued Barden on June 3, 2004, in the Circuit Court of Tunica County, Mississippi, asserting claims for personal injuries allegedly caused by one of the eight hundred stools. Plaintiff requested that Top Line's insurer, Great Northern, provide it a defense and indemnification in the *Baier* case. Great Northern initially agreed to indemnify and defend Barden in the *Baird* matter, but later withdrew its agreement for representation. Since that time neither Top Line nor its insurer, Great Northern, has provided any defense or indemnification to plaintiff.

Plaintiff filed this case on February 21, 2007 seeking a declaratory judgment that plaintiff is entitled to a defense and indemnification in the *Baier* matter under the insurance policy in question. Plaintiff argues that because one of the stools bought from Top Line is the alleged cause of Baier's injuries, the policy covers the claims, and Great Northern must provide a defense and indemnity. Great Northern and Top Line argue that plaintiff is not entitled to a defense or indemnification under the policy because plaintiff was at least partially responsible for Baier's injuries by its own acts or omissions either in moving the stools off and back onto the

casino floor or in failing in its duty to inspect the stools and slot area to insure safety. Alternatively, defendants contend that the stool was without defect and therefore not covered under the policy. According to Top Line, it has fulfilled its duties to Barden by adding Barden as an insured to its insurance policy. Top Line argues that it has no obligation to provide a defense or to indemnify the plaintiff under any circumstance. Great Northern argues that it has no duty to provide plaintiff a defense or to indemnify it because Barden's acts or omissions detailed above mean that the actions and negligence alleged in the *Baier* case were not solely Top Line's, but instead were engaged in to some degree by Barden, taking the claims out of the settlement agreement and policy coverage.

## LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

"In Mississippi, the interpretation of an insurance policy is a question of law, not one of fact." *See Roy Anderson Corp. V. Transcon. Ins. Co.*, 358 F. Supp. 2d 553, 560 (S.D. Miss. 2005). Generally, ambiguities in an insurance policy are construed against the preparer of the policy. *Farmland Mut. Ins. v. Scruggs*, 886 So.2d 714, 717 (Miss. 2004). However, where the terms of the insurance policy are plain and unambiguous, Mississippi courts must afford them their "plain ordinary meaning and apply them as written." *Roy Anderson Corp.,* 358 F. Supp 2d

at 560.

The Mississippi Supreme Court has held that "the primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." *Royer Homes of Miss., Inc., v. Chandeleur Homes, Inc.,* 857 So.2d 748, 752 (Miss. 2003), citing *Knight v. Sheppard Blgd. Supply, Inc.,* 537 So.2d 1355, 1358 (Miss. 1989). However, "[o]nly if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent." *Id.* at 752-53, citing *Pursue Energy Corp. v. Perkins,* 558 So.2d 349, 352 (Miss.1990). In short, this court "will not rewrite or deem a contract ambiguous where the language is clear and indicative of its contents." *A & F Properties, LLC v. Madison County Bd. of Sup'rs,* 933 So.2d 296, 301 (Miss. 2006); *Miss. Farm Bureau Mut. Ins. Co. v. Walters,* 908 So.2d 765, 769 (Miss.2005), citing *State Auto. Mut. Ins. Co. v. Glover,* 253 Miss. 477, 176 So.2d 256, 258 (1965).

Under Mississippi law an insurer has no duty to defend claims that fall outside the coverage provided in an insurance policy. *See Farmland Mut. Ins. v. Scruggs,* 886 So. 2d at 719; *see also State Farm Fire and Cas. Ins. Co. v. Brewer*, 914 F. Supp. 140, 143 (S.D. Miss 1996). Thus if the insurance policy in question is clear and unambiguous in extrinsic terms and the terms exclude coverage for the *Baier* case, then there is no duty for Great Northern to defend plaintiff's claims.

When determining intent of parties to a contract, courts look to the "objective language of the contract." *One South, Inc. v. Hollowell*, 963 So.2d 1156, 1162 (Miss. 2007). In making such a determination, courts use a three-tiered approach. *Id.* First courts use the "four corners" test to examine "the language that the parties used in expressing their agreement." *Id*. at 1162. In this

analysis, courts are not concerned with what the parties may have intended, but rather what they said, "since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Id.* "The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner v. Terry,* 799 So.2d 25, 32 (Miss. 2001); *Cherry v. Anthony,* 501 So.2d 416, 419 (Miss.1987).

Second, if the court cannot determine the parties' intent after reviewing the language within the four corners of the contract, it should then "apply the discretionary 'canons' of contract construction." *Id.* The application of these "discretionary canons" includes interpreting ambiguous provisions against the drafter, and/or possibly considering extrinsic or parol evidence. *Id.*; *see also Goldberg v. Lowe*, 509 F. Supp 412, 421 (N. D. Miss. 1981) (Extrinsic evidence is only considered when the written agreement is ambiguous or indefinite.).  Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. *Leach v. Tingle,* 586 So.2d 799, 801-02 (Miss.1991), citing *Stampley v. Gilbert,* 332 So.2d 61, 63 (Miss.1976).

"Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider  extrinsic or parol evidence." *One South, Inc.* 963 So. 2d at 1162 - 1163.  It is only when the review of a contract reaches this point that parol evidence – prior negotiation, agreements and conversations – might be considered in determining the parties' intentions in the construction of the contract. *One South, Inc.*, 963 So.2d at 1163.

Barden argues that the intent of the settlement agreement and the act of adding the plaintiff as an additional insured were for no other reason than providing plaintiff a defense and

indemnification in cases exactly like the *Baier* case. Because the entire purpose of the settlement agreement and the addition of plaintiff as an additional insured under Top Line's policy was for exactly this situation, says Barden, allowing Great Northern and Top Line to deny coverage, defense and indemnification will circumvent the settlement agreement between plaintiff and Top Line and negate the intent of the parties in adding plaintiff as an additional insured under the policy. Before the court may look to the intent of the parties, however, it must first determine that the policy is unclear or ambiguous. *Royer Homes of Miss., Inc., v. Chandeleur Homes, Inc.,* 857 So.2d at 752.

The language of the settlement agreement and the certificate of insurance, which eventually became an endorsement under the insurance policy, is not ambiguous. The language clearly states that Barden

> is named as an additional insured, but only with their respect to their liability for:
> * bodily injury or property damage caused by the sole negligence of Top Line Seating, Inc.; and
> * occurrences taking place on or after the effective date of the settlement agreement dated October 29, 2003.

Liability Insurance Contract Endorsement [Docket # 55-3, p. 37]. In addition to this clear language making Barden an "additional insured," the conditions precedent to coverage under the policy – that the injury be a result of the sole negligence of Top Line and that the injury occur after October 29, 2003 – are clear as well. As further confirmation of the intent of the parties, the settlement agreement explicitly states:

> [Barden] approves the additional insured language contained in the attached Certificate of Liability Insurance that will be effective for occurrences taking place on or after the date of this Agreement, per the terms of the attached Certificate.

Settlement Agreement [Docket No. 53-2, ¶3. P. 3]. Given the fact that the plaintiff, assisted by its counsel, not only agreed to the language of the settlement agreement and the certificate of insurance, but also specifically approved the language, the court cannot say that plaintiff did not have ample opportunity to examine the terms and their meaning and be sure that the terms matched plaintiff's intent for the agreement. There is nothing in either the settlement agreement, the certificate of insurance or the endorsement contained within the insurance policy (which contains the terms of the certificate of insurance) that is ambiguous or unclear. Accordingly, the court holds that it is the plain language of the contract that is controlling.

Under the clear terms of the settlement agreement and insurance policy, Top Line's duty to plaintiff was to modify the subject stools, which it did, and to add plaintiff as an additional insured under its insurance policy, which it also did. Top Line itself assumed no duty under the agreement or the insurance contract to provide a defense to or indemnify plaintiff against claims arising from the use of the stools.[2] The court holds that the uncontroverted evidence in this case demonstrates that Top Line clearly met its obligations to plaintiff as such there exists no genuine issue of material fact, and Top Line is entitled to judgment as a matter of law.

Finding that the terms of the settlement agreement and the endorsement pertaining to plaintiff as an additional insured under the policy are clear and unambiguous, the court must now determine whether the defendants properly denied coverage under the policy. The *Baier* claim is allegedly the result of one of the Top Line stools sold to plaintiff. There is uncontraverted evidence that many of the stools were moved off an back onto the casino floor by Barden

---

[2]The *Baier* matter was initially filed against plaintiff and Top Line. However, Top Line was subsequently dismissed from that lawsuit, leaving allegations of premises liability and gross negligence against plaintiff only.

employees before the incident giving rise to the *Baier* case. In addition, testimony from plaintiff's employees leaves some question as to whether the stool in the *Baier* case was ever removed from the casino floor at all to be modified by Top Line under the settlement agreement. Finally, evidence shows that plaintiff had a duty to and did inspect the gaming floor, slot area and stools on a daily basis for safety and security. These inspections included examining the stools to be sure that they were properly in front of the slot machines, checking the stability of the stools and checking for defective pads on the stools. *See* Deposition of Danny Wood, p. 88, lines 8-10, line 22, and p. 89, line 6. Because Top Line was not involved in any of these measures regarding the stool in the *Baier* case, there is no way that the alleged injuries could have resulted from the "sole negligence" of Top Line. If the injury was not the result of the sole negligence of Top Line, Barden has not met the first condition precedent to its entitlement to coverage as an additional insured and cannot be covered by the endorsement or policy in effect at the time of the accident.

Although plaintiff persuasively argues that there is testimony that shows that there is no set of circumstances that would allow an injury to be the "sole negligence" of Top Line, the plaintiff's "legal impossibility" argument does not void the contract or its terms to which plaintiff agreed. The fact that plaintiff now takes issue with language it expressly endorsed does not suddenly make the contract void, ambiguous or subject to introduction of parol evidence. *Turner v. Terry,* 799 So.2d 25, 32 (Miss. 2001). As testimony from an employee of Great Northern, Joy Ralston, confirms, there exist situations where coverage would arise under the policy and plaintiff would be provided a defense and indemnification: it is simply that both elements of the endorsement must be met. In this case, the first element is not met. Both the evidence in this case and the fact that Top Line was dismissed as a defendant in the *Baier* case demonstrate that

the injuries alleged in the *Baier* case are not the result of the sole negligence of Top Line. Accordingly, coverage is not provided.

The court holds that there exists no genuine issue of material fact and defendant Great Northern is entitled to judgment as a matter of law.

CONCLUSION

For the reasons stated herein, the court finds that the plaintiff's motions for summary judgment is DENIED; the motion of defendant Great Northern for summary judgment is GRANTED; the motion of defendant Top Line for summary judgment is GRANTED.  An order shall be issued this date in accordance with this memorandum opinion.

THIS, the 16th day of May, 2008.


_____/s/ S. ALLAN ALEXANDER_____
UNITED STATES MAGISTRATE JUDGE